H. P. FARIS ET AL. v. CLIFTON AND WILLIE SIMPSON.

Decided June 28, 1902.

1.—Community Property—Title—Survivor—Heirs.

The surviving wife, by qualifying as survivor in community, does not become the owner in her own right of the entire community property (Revised Statutes, articles 1696, 2237, 2238), so as to make the children of the deceased spouse her creditors for the value of their interest in the estate; and hence the children may recover their interest in community lands sold for a personal debt of the survivor incurred after her qualification as such.

2.—Same—Survivor in Community—Debts of—Liens.

Where a survivor in community, duly qualified as such by bond given, incurs debts which are for her own personal benefit, and not that of the community estate, such debts are not a charge upon the entire community estate entitled to preference over the claims of the children of the deceased spouse.

3.—Tax Sale—Illegality—Lien.

The purchaser of several lots of land sold together at a void tax sale is not entitled to enforce a lien against one of the lots for the taxes properly chargeable against it without showing the amount of the taxes chargeable against such lot.

Appeal from the District Court of Hunt County. Tried below before Hon. H. C. Connor.

*Hall & Flippen, Geo. S. Perkins,* and *A. E. Firmin,* for appellants.

*T. D. Montrose, L. A. Clark,* and *William Pierson,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—Crawford R. Simpson died intestate in 1881. His wife and seven minor children survived him, the appellees, Clifton and Willie Simpson, being the youngest of the children. There was a community estate consisting principally of lots in the city of Greenville, of the value, at that time, of about $4500. The estate owed no debts. Mrs. Simpson at once qualified as survivor. In 1890 she borrowed $7000 from the appellant Faris, and secured the debt by a mortgage on two lots belonging to the estate. The money was borrowed for the purpose of erecting a business house on one of the mortgaged lots, and the building was erected as contemplated. The mortgaged property, as improved, was worth more than the debt. The house was built by Mrs. Simpson for her own personal advantage, and not for the benefit of the estate. In 1893 Mrs. Simpson settled with her children for their interests in the estate by deeding to them, separately, certain lands belonging to the estate. The conveyances were made in good faith; the lands deeded to the children were worth no more than the value of their interests in the estate; the settlement was just, fair, and equitable. Mrs. Simpson afterwards defaulted on the Faris debt, and he sued and obtained judgment thereon with a foreclosure. The mortgaged property having been exhausted, he caused an execution to be levied on the lot in controversy, which is the property deeded to appellees by Mrs. Simpson in settlement of their interests in

the estate. Faris became the purchaser at the sale under execution. Appellees then brought this suit, which is in the form of an action of trespass to try title, against Faris and one Winters, other parties who disclaimed being joined as defendants. Winters claimed under a tax deed. The case was tried by the court without a jury, and judgment was rendered for the plaintiffs.

The trial judge filed conclusions of fact, and several complaints are made of the findings. The conclusions are warranted by the evidence and are therefore adopted.

Appellants contend that when Mrs. Simpson qualified as survivor she became the owner, in her own right, of all the community property; that the children thereupon ceased to have any interest whatever in the property belonging to the estate, and became creditors of their mother to the extent of the value of their interests in the estate, their claims against her being secured by the survivorship bond. The contention is not tenable. On the death of Simpson one-half of the community property belonging to himself and wife descended. to and vested in his children. Rev. Stats., art. 1696. As there were no debts, the title of the children was subject only to the right of the wife to administer the estate under the statute. By qualifying as survivor she acquired the right to manage and control the estate, but the title of the children was not thereby divested. After the lapse of one year they were entitled to have the estate partitioned and distributed. Rev. Stats., art. 2238. This could not be done if the property belonged to Mrs. Simpson, and the children had no interest therein. Again, the statute provides that upon the marriage of the surviving wife she shall cease to have control and management of the estate or the right to dispose of the same, and the estate shall be subject to administration as in other cases. Rev. Stats., art. 2237. If she acquired title by qualifying as survivor, her title would not be affected by her remarriage. The right of Mrs. Simpson to manage, control, and dispose of the property belonging to the estate, was a right she possessed as surviving partner and community administrator, and not as unqualified owner.

Another contention of appellants is that the debt to Faris was a charge against the entire community estate, and was entitled to priority of payment, out of the estate, over the claims of the children. Neither is this contention well taken. The debts to which such preference is given are those created during the connubial partnership. Rev. Stats., arts. 1696, 2229, 2230. The debts incurred by the survivor after qualifying as administrator have no such standing. One who credits a community administrator does so voluntarily, and does not thereby acquire an equitable lien against the community property superior to the rights and title of the children. We are not called on to determine the question whether the creditor would be entitled to such preference if the debt was incurred by the survivor, acting in the capacity of administrator, for the benefit of the estate, as no such case is made by the record herein. This particular debt was made for the personal advantage of

Mrs. Simpson, and was amply secured. A debt so created and so secured can not be urged in avoidance of a just and fair settlement made with the children.

The appellant Winters was the trustee in the deed of trust given by Mrs. Simpson to secure the Faris debt. It was provided by said deed that Mrs. Simpson should keep the taxes paid on the mortgaged property, and that in case of her failure to do so, the mortgagee might pay the same and should have a lien on the mortgaged lots to secure any payment so made. The taxes for the year 1893, levied by the city of Greenville against Mrs. Simpson, amounting to about $144, were not paid by her. Winters, for Faris, offered to pay the collector the taxes due on the mortgaged property, but the collector refused to receive less than the entire sum owing on taxes by Mrs. Simpson. The collector then advertised and sold all lands rendered for taxes by Mrs. Simpson, including the lots mortgaged to Faris and that in controversy, and at the sale Winters became the purchaser for the protection and benefit of Faris. The taxes levied against Mrs. Simpson included the sum of $36 to cover an illegal levy made by the city as a waterworks tax. The sale was made without any demand on Mrs. Simpson, and without her knowledge. The lots levied on by the city were sold in bulk. Excessive costs were charged in making the sale. The trial court held that the sale was void. It is not seriously contended that this holding was not correct. It is insisted, however, that appellants are entitled to a lien on the lot in controversy for the amount of the taxes paid by them which were properly chargeable against said lot. There was no proof as to what amount of taxes were chargeable against said lot, and the trial court held that the burden of proof on that issue was on the appellants. We are of opinion that the holding was correct, and that appellants failed to show a case entitling them to the foreclosure sought.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.