**PINKSTON et al. v. PINKSTON.**

**No. 3047.**

Court of Civil Appeals of Texas. Waco.

Dec. 18, 1952.

Rehearing Denied Jan. 22, 1953.

W. E. Pinkston, Dallas, Doyle Pevehouse, Corsicana, for appellant.

J. S. Simkins and Dawson & Dawson, Corsicana, for appellee.

TIREY, Justice.

This suit is complicated and does not yield to a short statement. The controlling question is the construction of the last will and testament of L. A. Pinkston, and it is in his own handwriting:

"It is my Will & desire that, when I am dead the oldest available of my wife's sons Nat, Tom, Will & Lucian shall, without bond, execute following wishes.

"1st. Give my body economical, unflowered, unadvertised & absolutely nonreligious burial.

"2nd. Hold securities inherited from my brother C. P. & use what he thinks is necessary, for support of my brother B. K. When no longer needed by B. K. divide equally between executor & brothers.

"3rd. At his mother's request, sell sufficient securities to pay debts, & then deliver to her one half of all remaining securities & money. Hold other half & give her cash income from same while she lives single.

"4th. Then divide the remainder equally between executor & brothers."

Testator died in December, 1926, survived by his wife and four sons. His will was admitted to probate and Nat C. Pinkston duly qualified as executor. Nat C. Pinkston administered the estate until the time of his death in January, 1947, and thereupon Tom Pinkston qualified as administrator de bonis non with the will annexed. Tom Pinkston continued in his capacity as administrator de bonis non with the will annexed until his death in 1948. (The decree of the court disposes of the interest of Tom Pinkston in the will on the basis that he died intestate prior to his mother without having been married and without having left children or adopted children surviving him, and that his mother and his two brothers, Will E. and Lucian A., were his sole and only surviving heirs at law). Thereupon W. E. Pinkston was appointed administrator de bonis non with the will annexed and he took charge of the estate and is acting as executor now. There has not been any partition or settlement of the estate of L. A. Pinkston, save and except such settlement as was made with the surviving widow. The surviving widow accepted the benefits bequeathed to her under the last will and testament of her husband. She died testate on November 24, 1950, and named Will E. Pinkston as executor, and thereafter he caused the will to be probated and he qualified as executor of her estate and same is still pending in the Probate Court of Navarro County. (Appellees in their brief say in effect that Will E. and Lucian A. were the chief beneficiaries in their mother's will and this statement is not denied.)

Nat C. Pinkston died intestate; was married one time only and that was to Susa Dale Pinkston, who survived him, and no children were born to him, and Mrs. Pinkston filed this suit in February, 1951, against Will E. Pinkston individually and in his capacity as executor of the estate of L. A. Pinkston, and also as executor of the estate of Mrs. Clara Pinkston, and Lucian A. Pinkston, defendants; and the Trust Department of the Chase National Bank of New York was made a party pro forma for limited purposes.

Plaintiff went to trial on her first amended original petition and her third supplemental petition. In her first amended original petition she alleged substantially that her husband died December 2, 1946, leaving no will, and leaving her as his sole survivor, having no children or adopted children, and left surviving his three brothers, Tom, Will E. and Lucian A., and his mother, Mrs. Clara Pinkston; that upon the death of L. A. Pinkston valuable property rights immediately vested in her husband under the terms of his father's will, and alleged specifically the interest in the property and described the property, both real, personal and mixed, and she prayed that the court adjudicate and award to her such interest as passed to her late husband under the terms of the will of L. A. Pinkston. She further alleged that L. A. Pinkston died intestate as to certain real property and personal property located in the homestead, and specifically described the homestead tract and personal property located therein, and set out her interest under the statute of descent

and distribution, and prayed that she recover such interest, and prayed for general relief. She further alleged substantially that the executor, Will E. Pinkston, individually and in his capacity as executor of the estate of L. A. Pinkston, deceased, denied that she had any rights, interests, titles or claims in and to the property passing to her husband under his father's will, and alleged in effect that Will E. Pinkston in his capacity as executor and individually, acting in conjunction with his brother Lucian, were guilty of certain fraudulent acts and conduct whereby they were attempting to assert certain claims against the estate of their father for the purpose of the enrichment of their mother's estate and to the detriment of their father's estate and for the purpose of defrauding her in the final partition and distribution of the L. A. Pinkston estate for the reason that Will E. and Lucian A. were the chief beneficiaries under their mother's will. This pleading consists of 22 pages in the transcript and necessarily we cannot state it in detail. The appellee in her third supplemental petition alleged that the will of L. A. Pinkston passed and fixed title in the personal property therein bequeathed to the four sons subject to the equitable charge against the property therein described in favor of L. A. Pinkston's surviving wife, and that this interpretation and construction was placed upon the will immediately after the death of L. A. Pinkston by his four sons as well as his surviving widow. Each of the parties answered in his respective capacity and these pleadings are voluminous; they contain pleas in abatement, many special exceptions, and in these pleas of abatement and special exceptions appellants urge that since the estate of L. A. Pinkston was pending in the Probate Court that the District Court was without jurisdiction to hear and adjudicate appellee's claims, and appellants assert that the relief sought by appellee constitutes a collateral attack on orders and judgments of the Probate Court of Navarro County duly entered in the administration of the L. A. Pinkston estate. They averred by their pleadings that if appellee has any cause of action at all it is one for a construction of the will of L. A. Pinkston,

deceased, but it is their contention on this matter that the will is not clear and does not express the intention of the testator. As we understand appellants' pleadings and their contentions here, it is to the effect that the will of L. A. Pinkston disposed of the whole of his estate and that title passed to the executor in trust for the benefit of his sons who survived his wife and in effect created only a contingent remainder that did not vest until after his wife's death, and by virtue thereof the plaintiff was precluded from any interest in the estate of L. A. Pinkston. All the pleas in abatement and special exceptions were overruled, and at the conclusion of the testimony defendants' motions for instructed verdict were overruled and the court submitted five issues to the jury.

1. "Do you find from a preponderance of the evidence that on or about the 14th day of July, 1926, the defendant, Lucian Pinkston, was indebted to his father, L. A. Pinkston, in the sum of $8,500.00 with six per cent interest from that date for funds advanced or loaned to him, if any, by his said father?", to which the jury answered "Yes."

2. "Do you find from a preponderance of the evidence that the said Lucian Pinkston has paid said debt, if any?", to which the jury answered "No."

3. "Do you find from a preponderance of the evidence that Nat C. Pinkston, Tom Pinkston and Mrs. Clara Pinkston released said debt, if any, to the defendant Lucian Pinkston, and evidenced such fact, if any, by transferring and delivering to the defendant, Lucian Pinkston, one hundred shares of Socony-Vacuum Oil Company stock?", to which the jury answered "No."

4. "What sum of money, if any, do you find from a preponderance of the evidence to be the reasonable rental value per month of the Pinkston homestead property located at 1419 West Third Avenue in the City of Corsicana?", to which the jury answered "$75.-00 per month."

5. "On what date do you find from a preponderance of the evidence that the defendant, Lucian Pinkston, moved into said homestead property located at 1419 West Third Avenue in the City of Corsicana, Texas?", to which the jury answered "December 23, 1950."

Appellants filed motions for judgment non obstante veredicto, which motions the court overruled, and the court granted appellee's motion for judgment, and the court further found and decreed (1) that upon the death of L. A. Pinkston all title owned or held by him in and to all securities and money immediately vested in his four sons and sole heirs mentioned in his will; that such will created a vested remainder in the four sons in and to the testator's part of the securities and money remaining after payment of the debts and the division of the remaining securities, giving to the surviving wife a one-half thereof, with the right of present possession of testator's part of said securities and money so remaining suspended as long as Clara Pinkston should remain unmarried, which limitation the court found terminated upon the death of Clara Pinkston on November 24, 1950. (2) That Susa Dale Pinkston, surviving wife of Nat C. Pinkston, plaintiff herein, is hereby adjudged by the court to be entitled to have and receive parts and portions of properties belonging to the estate of L. A. Pinkston and sets them out. (3) The court further found that in accord with the verdict of the jury and the undisputed evidence that defendant Lucian A. Pinkston is not entitled to have and receive any part or portion of the estate of L. A. Pinkston, deceased, in the homestead property located at 1419 West 3rd Street in the City of Corsicana that he otherwise would have received as an heir of L. A. Pinkston, deceased, or through his deceased brother Nat C. Pinkston until he, Lucian A. Pinkston, shall have discharged his indebtedness to said estate of L. A. Pinkston, deceased, as found by the jury, and which said indebtedness of Lucian A. Pinkston the court finds now amounts to $21,505, and he further found and ordered that Susa Dale Pinkston do have and recover of and from Lucian A. Pinkston her judgment for the sum of $2688, the same being a one-fourth of one-half of said indebtedness. (4) The court decreed the other one-half of said indebtedness of Lucian A. Pinkston belonged to the estate of Clara Pinkston, deceased, and in order to secure plaintiff Susa Dale Pinkston the decree established a lien in her favor upon the undivided part and interest of Lucian A. Pinkston in the estate of his father in the homestead property that Lucian A. Pinkston, as an heir of his father and as an heir of his deceased brother, Nat C., would have received in the event of Lucian's discharge of his indebtedness to the estate of his father. (5) The court further found that L. A. Pinkston died intestate as to the Pinkston homestead located at 1419 West 3rd Street in Corsicana, and all the personal property located therein or used in connection with the homestead, and decreed that plaintiff Susa Dale Pinkston do have and recover from the defendants Will E. Pinkston and Lucian A. Pinkston a one-sixteenth right, title and interest in said homestead property, and a one-eighth right, title and interest in all personal properties located therein or used in connection therewith, by virtue of inheritance from her deceased husband Nat C. Pinkston under the statute of descent and distribution. (6) The court further decreed that plaintiff Susa Dale Pinkston do have and recover her judgment against Lucian A. Pinkston for one-sixteenth of all rents due or that may hereafter become due from said Lucian A. Pinkston for the rent of the homestead from December, 1943 to December, 1950, as found by the jury, and created a lien in favor of her on the undivided interest of Lucian A. Pinkston in the estate of his father. (7) The court further decreed that Will E. Pinkston do not recover, either individually or in his capacity as administrator de bonis non with will annexed of the estate of said L. A. Pinkston, deceased, any part or portion of the indebtedness of Lucian A. Pinkston as fixed and established against his codefendant Lucian A. Pinkston, the said Will E. Pinkston seeking neither by his pleadings nor proof a recovery of any part of said indebtedness; he, the said Will E. Pinkston, on the contrary, joining his

co-defendant Lucian A. Pinkston in his contest thereof. (8) The court further found that the bequest, legacy or devise by the will of L. A. Pinkston, deceased, to the four sons, was intended as a specific legacy, and decreed that the aforesaid monies, stock and securities should not be subject to the debt that the defendant Lucian A. Pinkston owed to his father, L. A. Pinkston, deceased, nor shall his share under the will of his father be so chargeable. (9) The decree further provided that this judgment be at once recorded upon the civil minutes of this court and that the clerk of this court at once transmit to the County Court of Navarro County, Texas, sitting in matters probate a certified copy of this order and judgment for its observation and guidance in the estate of L. A. Pinkston, deceased, pending in said court.

To the foregoing action of the court Susa Dale Pinkston excepted insofar as such decree is adverse to her, and defendant Lucian A. Pinkston excepted insofar as same was adverse to him; and the defendant Will E. Pinkston excepted insofar as the same was adverse to him. Each of the Pinkstons seasonably filed his motion and amended motion for new trial and each was overruled and this cause is properly before this court for review.

Appellant Will E. Pinkston individually and in his capacity as executor and administrator assails the judgment and decree entered by eighty points, which points cover forty pages of legal paper, and necessarily we cannot state them, nor can we discuss them in detail. These points in effect assail each and every part of the judgment. Under the foregoing conditions we think it will simplify our task here and make our opinion more understandable if we deal with the decree of the court as we have set it out.

First of all, we are in accord with the construction placed upon the will by the court. Our Supreme Court in Chadwick v. Bristow, 146 Tex. 481, 208 S.W.2d 888, points 4–5, p. 891, made this statement of the rule: "It is well settled that a remainder is vested, where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate. * * * This vesting at the earliest possible time is uniformly held to be in the public interest and is favored by the law, which will not construe a remainder as contingent where it can reasonably be taken as vested." See cases there cited. Such rule has always been in force in Texas and our Supreme Court has not seen fit to change it. We think that when the will is read the applicability of the rule here stated is obvious and discussion would be useless. See also Cox v. George, Tex.Civ.App., 184 S.W. 326, writ ref. and cases there collated; Arnold v. Southern Pine Lumber Co., 58 Tex.Civ. App. 186, 123 S.W. 1162, writ dis.; Medlin v. Medlin, Tex.Civ.App., 203 S.W.2d 635, writ ref.

Much has been written by the Texas courts as to the construction of wills. Our view is that the general rule announced by our Supreme Court in McMurray v. Stanley, 1887, 69 Tex. 227, 6 S.W. 412, and the rule announced by the Supreme Court of the United States in Colton v. Colton, 1888, 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138, is applicable and controlling here. Our view here is grounded on the intention of the testator as expressed by the words used by him, and the court must look upon the intention of the testator as a polar star to direct it in the construction of his will. Appellee says in her brief "that the office of executor in the will under consideration did not carry with it the legal title and discretionary powers ordinarily vested in a trustee, but even if it did such title or powers could not and did not affect the character of the estate bequeathed to the remaindermen. Such estate was a vested right which came into existence upon the death of L. A. Pinkston and there was nothing the executor could do * * * which would defeat this vested interest." We are in accord with this view. Many of the leading cases dealing with intention are collated and discussed by this court in Byars v. Byars, Tex.Civ.App., 178 S.W.2d 582; Id., 143 Tex. 10, 182 S.W.2d 363, opinion by Commissioner Smedley, dissent-

ing opinion by Justice Sharp. The case of Darragh v. Barmore, Tex.Com.App., 242 S.W. 714, opinion by the late Justice Gallagher, contains an excellent statement of the general rule of construction. Our view is that the following rule is applicable to the factual situation here presented: "It is, of course, essential to immediate vesting (possession or enjoyment being postponed) that the person to take be presently in existence and of certain identity. * * * And it is also well established that the fact that the legal title is vested in trustees, with full discretion as to the application of the income or corpus to the uses of the beneficiary during the trust period, does not militate against the immediate vesting of the beneficial (equitable) title in the beneficiary, * * *." See Rust v. Rust, 211 S.W.2d 262, points 9–10, writ granted but judgment C.C.A. approved by S.Ct., 147 Tex. 181, 214 S.W.2d 462. See also statement of the rule in 33 Amer.Jur. sec. 93, p. 550. Because of the views here expressed it follows that we are in accord with the decree of the court that found and awarded to appellee her interest in the property that passed to and vested in her husband by virtue of the remainder created in the last will and testament of L. A. Pinkston. We are in accord with the trial court's views that he could take into consideration the construction that the sons of L. A. Pinkston had placed on the will in the proceedings had in the estate of Clara Pinkston, deceased. See Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92, and cases there cited; also 57 Amer.Jur. 725, sec. 1133; also 44 Tex.Jur. p. 743; 33 Tex.Jur. p. 566, sec. 110; Krieger v. Stauffer, Ohio Com.Pl., 67 N.E.2d 449 (Ohio Com.Pl.); Chas. W. Priddy & Co. v. Sanderford, 221 N.C. 422, 20 S.E.2d 341–343; Sanders v. James, 347 Mo. 255, 147 S.W.2d 424; In re Van Auken's Estate, Sur., 31 N.Y.S.2d 897, 901; In re Burdsall's Will, 171 Misc. 822, 13 N.Y.S 2d 896, 898. We are in accord with the court's view in holding that the court had jurisdiction to hear and adjudicate the rights of appellee to the estate of L. A. Pinkston. Defendants Will E. Pinkston and Lucian A. Pinkston each denied that appellee had any interest in the estate of L. A. Pinkston, deceased, and they sought to preclude her from any interest therein. The late Chief Justice Cureton in Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980, point page 985, made the following statement of the rule applicable here:

"The provisions of the Constitution confer upon the district court equity jurisdiction in as broad terms as is conferred probate jurisdiction on the county court. When it appears by the pleadings and the proof that the suit involves controversies and issues between the parties for which the probate jurisdiction of the county court is inadequate to grant the relief sought, then the district court has jurisdiction, and may grant the necessary relief. (Citing authorities.) * * * It has long been the established rule in this state that when questions of title are involved, where the case brings in question the construction of a will, as was done in that case, the district court is a proper tribunal in which to adjudicate such questions." Citing Little v. Birdwell, 21 Tex. 597, and Key v. Key, Tex.Civ.App., 167 S.W. 173, writ ref

Key v. Key, supra, is one of the leading cases on this point. See also Lauraine v. Ashe, 109 Tex. 69, 191 S.W. 563, 566, opinion by Chief Justice Phillips. In this case Chief Justice Phillips made this statement of the rule which we think is peculiarly applicable here:

"While it is customary to speak of the jurisdiction of the County Court over matters relating to estates of deceased persons under administration as 'exclusive,' and the entire current of our judicial decisions is to carefully protect the jurisdiction of that court over such matters, as it ought to be, yet it is plainly recognized that questions may arise affecting estates in regular course of administration, requiring, for illustration, the adjustment of equities, for the settlement of which the probate jurisdiction of the County Court is inadequate, and in such cases, notwithstanding the administration, resort may be had to the equity powers

of the District Court for the determination of those questions, the judgment to be performed through the Probate Court. This is a jurisdiction auxiliary and ancillary to that of the Probate Court. In some extraordinary instances it may be corrective."

See also Brooks v. O'Connor, 120 Tex. 121, 39 S.W.2d 22, also Jones v. Sun Oil Co., 137 Tex. 353, 153 S.W.2d 571. See also Laney v. Cline, Tex.Civ.App., 150 S.W.2d 176, cor.judg. It is our view that the district court had jurisdiction to hear and determine the issues tendered by the pleadings and the evidence and to adjudicate them between the parties.

 We are in accord with the court's finding to the effect that L. A. Pinkston died intestate as to the real estate, being the homestead tract, and also the personal property located therein. Our view is that a careful reading of the will shows that the testator did not intend for the court to make any presumption or conjecture as to what his intentions were as to the remainder of his estate not disposed of in the will, and we think that the rules announced and discussed in Wolkewitz v. Wood, Tex. Civ.App., 216 S.W.2d 611, n. r. e. are applicable and controlling here. See cases there collated.

We are in accord with each of the remaining findings of fact by the court and it is our view that they are supported by the undisputed testimony. We are also of the view that the statute of limitations as pleaded by Lucian A. Pinkston against his indebtedness to his father's estate was not available to him under the doctrine announced in McDaniel v. Willis, Tex.Civ. App., 157 S.W.2d 672, writ ref., and authorities there cited.

We have carefully considered each of the eighty points in appellant Will E. Pinkston's brief and each of the points presented by appellant Lucian A. Pinkston, and it is our view that none presents reversible error and each point is overruled.

We have carefully considered each of the cross-assignments of error of appellee wherein she excepted to the action of the trial court for refusing to enlarge the judgment previously rendered by the trial court. We assume that the trial court's action on appellee's motion to enlarge the judgment was based on the view that the judgment previously entered was broad enough and full enough to protect appellee, and we think the trial court must have assumed that when the decree entered adjudicating the rights of the parties shall become final that such executor of the estate of L. A. Pinkston will fully account to appellee for such property rights as she may have in the estate of L. A. Pinkston, deceased; otherwise, the courts are open to her for relief. See Kentz v. Kentz, Tex.Civ.App., 209 S.W. 200, point 1, and cases there collated, no writ of error history.

The judgment of the trial court is affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.