See also 270 S.W.2d 250.

**W. E. PINKSTON et al., Appellants,**

**v.**

**Susa Dale PINKSTON, Appellee.**

**No. 3336.**

Court of Civil Appeals of Texas.

Waco.

Feb. 16, 1956.

Rehearing Denied March 22, 1956.

W. E. Pinkston, W. H. Hall, Dallas, for appellants.

Dawson & Dawson, Corsicana, for appellee.

TIREY, Justice.

This action involves a probate matter and the appeal is from an order of the district court refusing to approve a final account. At the conclusion of the testimony the court overruled written motion for instructed verdict. The issues submitted by the court, absent the burden of proof clause, are substantially:

(1) Do you find that W. E. Pinkston has been guilty of wilful default or gross negligence in the management of said estate, resulting in loss to it? Answer: Yes.

(2, 7, 9 and 11) Do you find that W. E. Pinkston in his capacity as Administrator of the Estate of L. A. Pinkston, deceased, acted prudently, in good faith and for the benefit of said Estate and all those ultimately entitled to it (a) in contesting Cause No. 27618 on the docket of this court? Answer: No; (b) in contesting Suit No. 27667 on the docket of this court? Answer: No; (c) in contesting Suit No. 27665 on the docket of this court? Answer: No; (d) in contesting Suit No. 27662 on the docket of this court? Answer: No.

(13) Do you find that the $1206.15 in dividends from stock was a part of the cash income of the estate of L. A. Pinkston prior to the death of Clara Pinkston? Answer: No.

(14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28) Do you find that W. E. Pinkston, in his capacity as Administrator of the Estate of L. A. Pinkston, deceased, acted prudently, in good faith and for the benefit of the estate, and all those ultimately entitled to it (a) when he paid to Paul, Middleton & Eady as fire insurance the sum of $3.85, as claimed in his final account? Answer: No; (b) when he paid to J. Vernon Harwell, County Clerk of Navarro County, as court cost the sum of $25.12 as claimed? Answer: No; (c) when he paid to the City of Corsicana as taxes on the homestead the sum of $23.98, as claimed, Answer: No; (d) when he paid to the Tax Collector of Navarro County, Texas, as taxes on the homestead the sum of $17.25, as claimed? Answer: No; (e) when he paid to the Corsicana Independent School District as taxes on the homestead the sum of $27.68, as claimed? Answer: No; (f) when he paid fire insurance on the homestead in the sum of $4.28 as claimed? Answer: No; (g) when he paid fire insurance on the homestead in the sum of $5.63, as claimed? Answer: No; (h) when he paid taxes to the City of Corsicana on the homestead in the sum of $26.24, as claimed? Answer: No; (i) when he paid to Navarro County as State and County taxes on the homestead the sum of $22.50, as claimed? Answer: No; (j) when he paid to the Corsicana Independent School District for taxes the sum of $27.67, as claimed? Answer: No; (k) when he paid insurance on the homestead in the sum of $4.96, as claimed? Answer: No; (l) when he paid fire insurance on the homestead in the sum of $6.21, as claimed? Answer: No; (m) when he paid fire insurance on the homestead in the sum of $4.30, as claimed? Answer: No; (n) when he paid the sum of $627.00 as Federal Income taxes on said Estate, as claimed? Answer: No; (o) when he paid the sum of $806.00 as Federal Income taxes on said Estate, as claimed? Answer: No.

The court overruled W. E. Pinkston's motion for judgment non obstante veredicto and granted appellee's motion for judgment on the verdict of the jury, and in the decree we find the following recitals:

"* * * and the court having examined such Final Account in the

light of the findings of the jury and the undisputed evidence adduced upon the trial of this cause, and the Court having made such additional considerations and findings as were authorized by law, finds and orders that the following properties and assets were received by W. E. Pinkston since the date of his mother's death on November 24, 1950, and have come into his hands, and constitute assets of the estate, for which he is accountable:

## "Cash

| | | |
|---|---|---|
| 12-10-50 | Socony-Vacuum Oil Company Dividend | $1206.15 |
| 3-13-51 | Socony-Vacuum Oil Company Dividend | 657.90 |
| 6-13-51 | Socony-Vacuum Oil Company Dividend | 877.20 |
| 8-14-51 | Corsicana Amusement Company Dividend | 7.50 |
| 9-19-51 | Socony-Vacuum Oil Company Dividend | 877.20 |
| 12-11-51 | Socony-Vacuum Oil Company Dividend | 1535.10 |
| 1-14-52 | Corsicana Amusement Company Dividend | 7.50 |
| 2-10-52 | Socony-Vacuum Oil Company Dividend | 1096.50 |
| 7-11-52 | Corsicana Amusement Co. Dividend | 7.50 |
| 9-10-52 | Socony-Vacuum Oil Co. Dividend | 1096.50 |
| 10-8-52 | Proceeds of note of $800.00, payable to First Natl. Bank, Corsicana, Texas | 800.00 |
| 12-7-52 | Socony-Vacuum Oil Co. Dividend | 1206.50 |
| 2-10-53 | Corsicana Amusement Co. Dividend | 7.50 |
| 3-19-53 | Socony-Vacuum Oil Co. Dividend | 1206.50 |
| 6-15-53 | Socony-Vacuum Oil Co. Dividend | 1206.50 |
| 7-3-53 | Corsicana Amusement Co. Dividend | 7.50 |
| 9-15-53 | Socony Vacuum Oil Co. Dividend | 1206.50 |
| 12-16-53 | Socony-Vacuum Oil Co. Dividend | 1809.75 |
| 2-10-53 | Refund from Tax Collector of Navarro County, Texas, arising out of mistake in assessing property taxes paid by Administrator on Jan. 1, 1953, such refund being in the amount of $10.50, one-half of which is owned by the estate of Mrs. Clara Pinkston, the other one-half being owned by L. A. Pinkston Estate | 5.25 |
| 4-23-51 | Socony Vacuum Oil Co. Dividend | 1206.50 |
| 6- 54 | Socony Vacuum Oil Co. Dividend | 330.00 |
| 9- 54 | Socony Vacuum Oil Co. Dividend | 330.00 |
| 12-20-54 | Socony Vacuum Oil Co. Dividend | 495.00 |
| 4-23-54 | Corsicana Amusement Co. Dividend | 5.00 |
| 7-8-54 | Corsicana Amusement Co. Dividend | 7.50 |
| 3-18-55 | Socony-Vacuum Oil Co. Dividend | 330.00 |
| 6-15-55 | Socony-Vacuum Oil Co. Dividend | 330.00 |
| | Total Cash | 18,955.55 |

## "Stock

| | | |
|---|---|---|
| 1948 | 2150 Shares of Socony Vacuum Oil Co. Stock owned by Estate | 2150 shares |
| 1948 | Received 43 shares of Socony Vacuum Oil Co. stock, being 2% stock dividend on 2150 shares | 43 shares |
| 1952 | Purchased 220 shares of Socony Vacuum Oil Co. stock at $31.00 per share, plus 220 stock rights for $6,-820.00 | 220 shares |
| | Total shares Socony Vacuum Oil Co. stock which have come into Administrator's hands | 2413 shares |
| 1948 | 5 shares Corsicana Amusement Co. Stock owned by the Estate | 5 shares |

### "Other Property

"½ Undivided interest in household furnishings located in Pinkston homestead at 1419 West 3rd Ave. in Corsicana, Texas

"½ Undivided interest in Pinkston homestead at 1419 W. 3rd Ave., Corsicana, Texas.

"The court further finds with reference to the dividend of Socony Vacuum Oil Company, dated December 10, 1955, in the amount of $1206.15, that such dividend was declared prior to the death of Mrs. Clara Pinkston on November 24, 1950, but was not actually received by the Administrator until on or about December 10, 1950, and that the Will of L. A. Pinkston directs that the Administrator 'hold the other half and give her cash income from same while she lives single,' and that such dividend was not 'cash income' to the estate within the purview of such Will until after the death of Mrs. Clara Pinkston and therefore, such amount properly belongs to and forms a part of the Estate of L. A. Pinkston for which the Administrator is accountable.

"The court further finds and allows the payment by the Administrator of the following charges and expenses of the administration:

| | | |
|---|---|---|
| 4-14-52 | Rent on safety deposit box in bank, ½ owned by L. A. Pinkston Estate | 3.60 |
| 10-7-52 | Bought 220 shares of Socony Vacuum Oil Co. stock from Socony Vacuum Oil Co. based on privilege given stockholders, on basis of 1 new share for each 10 owned by estate, estate at that time owning 2193 shares, the 220 shares at $31. | 6820.00 |

| | | |
|---|---|---|
| 10-25-52 | Paid to Chase Natl. Bank, transfer agent of Socony Vacuum Oil Co. for additional necessary rights to make out the 220 shares of stock | 1.09 |
| 3-19-53 | Paid off note to First National Bank of Corsicana, Texas, and $21.60 interest | 821.60 |
| 1-5-54 | Paid income tax on Estate | 1022.95 |
| 4-12-54 | Paid Susa Dale Pinkston on partial distribution | 1228.27 |
| 4-22-54 | Paid Lucian A. Pinkston on partial distribution of estate | 1952.64 |
| 4-15-54 | Paid handling charge to Bank | .25 |
| 6-2-54 | Paid W. E. Pinkston on partial distribution of Estate | 1850.91 |
| 3-21-55 | Paid income tax for year 1954 | 266.16 |
| | Total monies paid out for expenses and distribution which are approved by the court | 13,967.47 |

"The court further finds that prior to the death of Mrs. Clara Pinkston, the administrator, W. E. Pinkston, following the directions of the Will of L. A. Pinkston, paid to Mrs. Clara Pinkston, the cash income to the estate during the remainder of the lifetime of Mrs. Clara Pinkston, and such items listed on Pages 3 and 4 of the Administrator's First Supplemental Exhibit and designated as Items 1 through 17 are hereby approved, but Item 18 is not approved as a proper payment to her estate.

"It further appearing to the court that there is confusion and obscurity in the Final Account, including the supplements thereto, and that some items may be duplicated and included in other items and that the Administrator has unnecessarily prolonged the administration of the estate, and failed to act in good faith in bringing the administration to a close, and has failed and refused to file annual exhibits and make application for court approval of his actions pertaining to the estate as required by law, and had failed to make final settlements in accordance with the requirements of Art. 3620, Rev.Civ.Stats. of Texas, and has been guilty of wilful default and gross negligence in the management of said estate, resulting in loss to it, and has failed to comply with other statutes pertaining to the administration of an estate,

"It is therefore ordered, adjudged and decreed that all other claims, charges, expenses and commissions asserted against the estate which are not expressly allowed herein, are hereby denied and refused.

"The court further finds that the administrator has heretofore made partial distribution of the estate of L. A. Pinkston, in which he has delivered 2313 shares of Socony Vacuum Oil Company stock to the respective beneficiaries of the estate, leaving a balance of stock in such company on hand at this time of 100 shares and that the administrator also has made a distribution of cash, in which the payment made to himself was in the amount of $101.73, less than the amount to which he was entitled to receive, and that the remaining court costs of which this estate is justly indebted, and which will accrue in the distribution of the estate is in the probable amount of $50.00, leaving a balance of cash on hand for which the said administrator is accountable, and which should be distributed to those entitled to receive same in the amount of $4836.35.

"And the court being of the opinion that a partition and distribution as hereinafter ordered, should be made, and the court, having ascertained that such estate is susceptible to partition and distribution, and further, that the hereinafter named persons who own the respective shares and interests in the properties and assets hereinafter mentioned are, by law, entitled to partition and distribution;

"It is therefore ordered, adjudged and decreed that Mrs. Susa Dale Pinkston, who resides in Corsicana, Texas, and who is an adult, is entitled to share in all of said estate, save and except the homestead and its furnishings, and the Corsicana Amusement Company stock, which she has heretofore conveyed, and the propor-

tionate part to which she is entitled is a one-fourth interest; that W. E. Pinkston, who resides in Dallas, Dallas County, and who is an adult, is entitled to share in said estate, the proportionate part to which he is entitled being a $5/16$th interest in the assets and properties of such estate except in the real estate hereinafter described, in which he owns a $32/192$nd interest, and the household furnishings, in which he has a $5/32$nd interest, and the Corsicana Amusement Company stock, in which he has a $9/32$nd interest (he having heretofore purchased the interest of Mrs. Susa Dale Pinkston in such stock); that Lucian A. Pinkston, who resides in Navarro County, Texas, and who is an adult, is entitled to a share of said estate, the proportionate part to which he is entitled, being a $5/16$th interest in all the properties and assets of the estate, except the real estate hereinafter described, in which he has a $44/192$nds interest, and the household furnishings, in which he has a $9/32$nds interest (he having purchased the interest heretofore owned by Mrs. Susa Dale Pinkston in the homestead and its furnishings), and the Corsicana Amusement Company stock, in which he owns a $9/32$nds interest; that the Estate of Clara Pinkston, W. E. Pinkston, Independent Executor, pending in the Probate Court, Navarro County, Texas, is entitled to share in said estate, the proportionate part to which it is entitled being a $1/8$th interest in the properties and assets of such estate except in the real estate hereinafter described, in which it owns a $116/192$nds interest and the household furnishings in which it owns a $18/32$nds interest, and the Corsicana Amusement Company stock, in which it has an $18/32$nds interest. That such estate to be distributed is fully described as follows:

100 Shares of Socony Vacuum Oil Co. stock

Cash in hands of Administrator, or for which he is accountable....................... $4,988.08

Less amount to which administrator is entitled by reason of underpayment on partial distribution $101.73

Less anticipated court costs 50.00

151.73

Total Cash to be Distributed 151.73 $4836.35

5 Shares of Corsicana Amusement Company stock

Lot No. 6 and 20 feet off of the E. side of Lot No. 7, according to the Texas Loan Agency Addn. of Corsicana, Texas, as per map of said Addition recorded in Vol. 75, p. 266, Deed Records, Navarro County, Texas,

Household furnishings contained in the Pinkston homestead consisting of miscellaneous articles of furniture and other equipment, as set forth in inventory filed in the estate.

"It is further ordered, adjudged and decreed that W. B. Robinson, Jimmy Morris and John Chirafis, who are discreet and disinterested persons be and they are hereby appointed Commissioners to forthwith make a partition and distribution of such estate:

"It is further ordered that a certified copy of this judgment shall be transmitted to the Clerk of the County Court of Navarro County, Texas, for observance and that the County Judge of such Court shall make such orders as may be necessary to enforce this judgment. It is further ordered that all costs of suit incurred herein shall be and the same are hereby adjudged against W. E. Pinkston, Individually.

"To which judgment of the Court, the said W. E. Pinkston, Individually and as Administrator de bonis non of the estate of L. A. Pinkston, deceased, and as Executor of the Estate of Mrs. Clara Pinkston, deceased, excepts and gives notice of appeal to the Court of Civil Appeals for the 10th Supreme Judicial District sitting at Waco, Texas."

Perhaps we should say that W. E. Pinkston gave written notice of appeal as

administrator of the estate of L. A. Pinkston, deceased, and written notice of appeal as executor of the estate of Clara Pinkston, deceased, and written notice of appeal by himself individually, and seasonably perfected his appeal to this court.

The decree is assailed on thirty points. They cover Pages 4 to 24 inclusive of legal size paper. It is obvious that we cannot state them in detail. Suffice to say they assail the action of the trial court in refusing to grant their motion for instructed verdict and the court's refusal to grant motion for judgment non obstante veredicto, and they assail findings of the jury on the ground that there is no evidence to tender the issues submitted, and that if there be evidence it is insufficient to sustain the findings of the jury thereon. These points likewise assail each and every finding made by the trial judge and say in effect that there is no evidence to support such findings and no evidence to tender such issues, but if tendered they should have been submitted to the jury for determination. The parties and substantially all of the subject matter have been in this court since 1952. See Pinkston v. Pinkston, Tex.Civ.App., 254 S.W.2d 196 (nre); Id., Tex.Civ.App., 266 S.W.2d 515 (nre); Id., Tex.Civ.App., 269 S.W.2d 932 (nre); Id., Tex.Civ.App., 270 S.W.2d 250 (nre).

■ The pleadings in this cause are voluminous. The transcript consists of approximately 200 pages. The pleadings involve much of the record history of the preceding four cases and other details. The statement of facts and exhibits consist of approximately 600 pages. Since the verdict of the jury and the additional findings made by the trial court are each assailed, it has been necessary for us to review each of the opinions heretofore rendered by this court as well as carefully examine the statement of facts. Going back to Pinkston v. Pinkston, Tex.Civ.App., 254 S.W.2d 196, we find that much of the pertinent history and facts and circumstances surrounding this entire transaction are related in detail and with accuracy in that opinion of this court. Suffice to say

that L. A. Pinkston died in 1926 and his wife died in 1950, and after the executor and administrator W. E. Pinkston refused to recognize the interest of Susa Dale Pinkston, widow of Nat C. Pinkston, Mrs. Pinkston filed suit in February 1951. That case reached our court in 1952, and an opinion was handed down in December 1952. Motion for rehearing was overruled in January 1953 and a few months thereafter the application for writ of error was N.R.E.'d by our Supreme Court. That opinion therefore became the law of the case, so as early as 1953 Will E. Pinkston knew that Susa Dale Pinkston had established her interest in the estate of L. A. Pinkston, but notwithstanding such fact, Will E. Pinkston made no effort to make settlement of his father's estate, although it was solvent and no legal obstacle was present to prevent his so doing. The trial court's findings to the effect that the administrator has unnecessarily prolonged the administration of the estate and failed to act in good faith in bringing the administration to a close, and has failed and refused to file annual reports, and failed to make application for court approval of his acts pertaining to the estate as required by law, and has failed to make final settlement as required by the Revised Civil Statutes, and has been guilty of wilful default and gross negligence in the management of said estate, resulting in loss to it, and has failed to comply with other statutes pertaining to the administration of estates, yet, being familiar with the records and the causes coming to this court, and being familiar with the record now before us, we are in accord with the trial court's view in this behalf, as well as each of the other special findings made by the trial court, and we find that the facts are without dispute to support each of the special findings made by the trial court. Needless to say, the evidence is ample to support the findings made by the jury.

■ Going back to the first Pinkston case before us, reported in 254 S.W.2d 196, this court found that in the trial court Will E. Pinkston, as executor and individually, specifically denied that Susa Dale

Pinkston had any rights, interest, titles, or claims in and to the property passing to her husband, Nat C. Pinkston, under his father's will. See, page 199 of 254 S.W.2d. In this first case Mrs. Pinkston, on appeal, cross-assigned error and complained of the trial court's failure to enlarge the judgment entered in the cause. In discussing this cross-assignment we said [p. 203]:

"We assume that the trial court's action on appellee's motion to enlarge the judgment was based on the view that the judgment previously entered was broad enough and full enough to protect appellee, and we think the trial court must have assumed that when the decree entered adjudicating the rights of the parties shall become final that such executor of the estate of L. A. Pinkston will fully account to appellee for such property rights as she may have in the estate of L. A. Pinkston, deceased * * *."

This court placed the foregoing paragraph in the opinion with the hope that the executor would realize that it was his legal duty to proceed forthwith to partition and divide the estate of L. A. Pinkston with Mrs. Susa Dale Pinkston and fully account to her for such share of the L. A. Pinkston estate that had legally vested in her because of the fact that her husband had preceded her in death. The record before us then showed that the L. A. Pinkston estate was liquid and that there was no legal reason why the executor could not make settlement with Mrs. Pinkston. Her share in the L. A. Pinkston estate had been adjudicated and L. A. Pinkston's widow had died testate and her estate was liquid and there was no legal obstacle that prevented W. E. Pinkston, in his capacity as executor or administrator of these estates, from immediately making final distribution and partition of the estate of L. A. Pinkston insofar as Mrs. Susa Dale Pinkston was concerned. It now conclusively appears that such executor had no intention of abiding by the law of the case as written in 254 S.W. 2d 196, supra, and proceeded to pursue a course of conduct contrary to the law re-lating to estates of decedents and against his fixed duty as provided by law and for his own enrichment, as shown by his attempt to take $18,300 out of the L. A. Pinkston estate and place it into his mother's estate (See Pinkston v. Pinkston, Tex. Civ.App., 266 S.W.2d 515), where he and his brother would share the same equally, whereas if the funds were left in the L. A. Pinkston estate, Mrs. Susa Dale Pinkston would share one-fourth and W. E. Pinkston and his brother would share three-eighths each. Since the L. A. Pinkston estate was liquid and no legal reason existed for the executor to delay the partition and closing of the estate in settlement with Mrs. Pinkston, and since the executor failed and refused to do his legal duty and sought to delay unnecessarily the partition and settlement of the L. A. Pinkston estate with Mrs. Pinkston, and since the administrator and/or executor failed to comply with the statutes relating to the disbursement of funds, except when it suited him to do so, it is our view that the administrator's conduct in the handling and management of the L. A. Pinkston estate (since the opinion became final in the first Pinkston case, 254 S.W.2d 196, supra), is such that it conclusively supports the findings made by the trial court. It is also our view that the trial court did not abuse his discretion in refusing to approve the executor's claim for commissions and attorney's fees, as well as his claim for the payment of certain other items referred to in the decree, because no order was obtained therefor, and that such action of the court is in harmony with the long-established rule in Texas. See, Scott v. Taylor, Tex.Civ.App., 294 S.W. 227 (no writ history) and authorities there cited. See also Huff v. Huff, 132 Tex. 540, 124 S.W.2d 327, point 5; Richardson v. McCloskey, Tex.Com.App., 276 S.W. 680, point 6; Ogden v. Shropshire & Adkins, Tex.Civ. App., 37 S.W.2d 249, writ ref., point 5; James v. Craighead, Tex.Civ.App., 69 S.W. 241, points 3–4 (no writ history); Cocke v. Naumann, Tex.Civ.App., 188 S.W.2d 781, point 8 (writ ref. wom); Lanius v. Fletcher, 100 Tex. 550, 101 S.W. 1076, 1078;

Arts. 3695 and 3696, Vernon's Ann.Civ. Stats.

We find no merit in any of the contentions made by appellant and each point assigned by appellant is overruled.

Accordingly, the judgment of the trial court is affirmed.